In the Matter of McKOWNVILLE FIRE DISTRICT, Respondent, v BRYN MAWR BOOKSHOP, Appellant.

Third Department, November 24, 1976

*John P. MacArthur* for appellant.

*Louis Carnevale* for respondent.

HERLIHY, J. The petitioner commenced a special proceeding in Supreme Court to recover possession of its real property and rents due and owing. The record establishes that the appellant entered into possession of the property pursuant to an oral agreement with the petitioner whereby the appellant was to pay petitioner the sum of $100 per month. The appellant's contention upon this appeal that the trial court erred in finding a landlord-tenant relationship is without any merit.

After the appellant entered into possession as a month-to-month tenant, the parties reached an oral agreement whereby the appellant agreed to pay one half the cost of "oil, electricity and *some* of the repairs" in addition to the monthly sum of $100. The appellant and the petitioner became involved in a dispute over repairs to the premises which appellant felt were needed but the petitioner refused to make. As a result, it appears that appellant made no more rental payments after November of 1972. The petitioner's petition sought rent totaling $1,100 from January 1, 1973 to November 1, 1973.

The appellant in its response to the petition raised several affirmative defenses and counterclaimed for the cost of repairs to a furnace which had to be replaced in 1973, and other miscellaneous items, together with damages to its trade as a

book store and to its books arising out of faulty conditions in the premises.

The primary issue upon this appeal is the question of title to the premises.

The petitioner contends that the appellant as a tenant cannot raise any issue of title in these summary proceedings and/or that appellant is estopped from raising any question of title. While ordinarily the question of title could not be raised because of jurisdictional problems related to summary proceedings in Justice Court, the present action is in the Supreme Court and there is no jurisdictional problem with respect to the question of title as it might relate to eviction (see *Matter of Myers v Blaise*, 23 AD2d 518). It is well established that a tenant is estopped from claiming a superior title in himself during the terms of a lease; however, in the case of *Metropolitan Fuel Distrs. v Coogan* (277 App Div 138, 142), relied upon by the petitioner, the court noted that after a lease had expired the tenant could assert a title superior to the former landlord. In the instant case the tenancy was month to month and the tenant had paid no rentals since November of 1972. There is no merit to the contention that the landlord-tenant relationship estops the tenant in this case from raising the issue of a superior title in itself (see *Hetzel v Barber*, 69 NY 1, 15).

The remaining question as to title is whether or not the appellant established that it in fact was the owner of the premises at any time during its tenancy which would affect the petitioner's claims in this case.

The petitioner introduced into evidence two deeds to it as grantee of the subject premises. The first deed is dated May 16, 1933 from Shell Eastern Petroleum Products, Inc., a Delaware corporation, and it contained the following clause: "provided, however, that should the premises hereby remised, released and quitclaimed cease to be used for Fire Department purposes by the party of the second part, its successors and assigns, then in that event the said premises shall revert absolutely to the party of the first part, its successors and assigns."

The second unconditional deed is dated March 26, 1948 from Shell Oil Company, Inc., a Virginia corporation, and was recorded in the proper office on April 5, 1948 and it recites: "Being a part of the same premises conveyed as PARCEL 4 by Shall Eastern Petroleum Products, Inc., to Shell Union Oil

Corporation by deed dated October 26, 1936, and recorded in the Clerk's Office of Albany County, New York, in Book 886 of Deeds, at Page 315; and subsequently conveyed as part of PARCEL 4 by Shell Union Oil Corporation to Grantor herein, by deed dated April 28, 1939, and recorded in said Clerk's Office in Book 908 of Deeds, at Page 353."

The appellant introduced in evidence a deed dated April 12, 1973 from Shell Oil Company, a Delaware corporation, recorded on July 12, 1973 which conveys the subject premises to it. This deed to appellant specifically refers to the 1933 deed of Shell Eastern Petroleum Products, Inc. to petitioner and conveys its reversion interest to appellant.

It is apparent that the mere showing by appellant that it possessed a deed given in 1973 would not be sufficient to establish that its grantor had any title to the premises or to the reversionary interest. To establish such an interest in its grantor, the appellant introduced in evidence a certificate from its grantor which recited that it, Shell Oil Company, had been known as Shell Union Oil Corporation prior to September 22, 1949; that Shell Eastern Petroleum Products, Inc. had been a wholly owned subsidiary and was dissolved on November 2, 1936 with all of its properties going to "Shell Union"; that on May 1, 1939 "Shell Union" conveyed "substantially" all of the former "Shell Eastern" property to Shell Oil Company, Incorporated, a Virginia corporation; that on September 30, 1949 the Virginia corporation was dissolved and conveyed all of its properties to the appellant's grantor.

This "certificate" or affidavit of identity of the various Shell Corporations and their activities is insufficient to establish the appellant's claim of title to the reversionary interest in this case. If anything, it tends to establish title in the petitioner by referring to the 1939 conveyance from Shell Union to the Virginia corporation which was petitioner's grantor in the 1948 deed referred to hereinabove and which referred to a 1939 conveyance to it by Shell Union of the property at issue. The burden of proof as to title was on the appellant as an affirmative defense. While appellant proved that it received title to the reversionary interest from Shell Union which in turn received it from Shell Eastern, the original grantor to petitioner in 1933, the same proof established a conveyance from Shell Union to the Virginia Shell corporation that conveyed the reversion to petitioner in 1948, about 25 years before appellant received a deed. Faced with its own proof of

title herein, the appellant had the further burden of showing that the conveyance to it was the result of an "unbroken" chain of title. The appellant's claim that it had title to the reversion is not established. Consequently, the factual and legal issue of whether or not the petitioner had ceased using the premises is not before us.

Upon the issues of eviction and rent due and owing, the petitioner upon its part of the case established a landlord-tenant relationship, the breach of the tenant's obligation by a failure to pay rents and a right to recover the rents.

### DAMAGES

The counterclaim of the appellant for damages for the injuries to its business or supplies was properly denied because of a failure of proof of negligence on the part of the petitioner and/or the breach of a specific duty on the petitioner's part.

However, the appellant did offer unrebutted proof of the cost of certain repairs which it made and the petitioner concedes that there was an agreement on its part to pay at least one half of the repairs. The trial court found as a fact that the appellant had agreed to pay one half of repairs; however, the sole evidence in the record is that the appellant was to pay one half of "some of the repairs". It is well established that prior to the furnace's complete replacement the petitioner had repaired the furnace and paid for such repairs. Furthermore, the petitioner had a committee charged with the duty of making repairs. A representative of the petitioner conceded that at least on one occasion the appellant had deducted the cost of repairs made by it from rents. The representative of the petitioner also testified that it had made repairs to a certain door.

The present record establishes that as a part of the agreement of the parties, the petitioner had agreed to make repairs and the trial court found, as a matter of fact, that the petitioner had made various repairs. Furthermore, the repairs were all made to items that service the entire building on the premises and the record establishes that the petitioner had reserved to itself the right to use certain areas of the building. The responsibility of the petitioner for repairs as claimed in this case is established (see *Melodee Lane Lingerie Co. v American Dist. Tel. Co.,* 18 NY2d 57, 63). Having established the duty to make the repairs, and having notified the pe-

titioner of their necessity, the appellant could make the repairs itself and charge the petitioner after the petitioner failed to make them (cf. *Warner Bros. Pictures v Southern Tier Theatre Co.,* 279 App Div 309, 314).

The record does not sustain the factual finding of the trial court that the appellant had agreed to pay for one half of *all* repairs. One of the petitioner's witnesses testified that there was an agreement to pay one half of "some" of the repairs. This was never made more specific on the petitioner's case and the evidence is that the petitioner with two exceptions made all repairs to the furnace. The first exception occurred in November of 1972 when the appellant advised the petitioner in writing that certain furnace repairs had been made and the cost would be deducted from future payments. This repair cost $211.75 and was deducted from rentals by appellant. In this regard the petitioner's evidence was that no rentals had been paid since November of 1972 but it sought money only from January 1, 1973 for rents. It is established that petitioner had accepted the payments for repairs in lieu of actual rentals and that the petitioner had the obligation to repair the furnace.

As for those items of repair other than furnace repairs, the record contains insufficient evidence that the petitioner was given reasonable notice of their necessity or failed to act with due diligence and appellant failed to establish any right to charge such other repairs to the petitioner. Taking into account the offset of the bill of $211.75 against rentals, the appellant has proven the sum of $4,875 for replacement of the furnace as an item which it is also entitled to recover.

The judgment should be modified, on the law and the facts, without costs, so as to provide that appellant recover from the petitioner the sum of $4,875, with interest from November 1, 1973, and, as so modified, affirmed.

Settle order on notice.

MAIN, J. (concurring in part and dissenting in part). I agree with the majority on the primary issue that the relationship of landlord-tenant was established. However, as to many of the majority conclusions, I fail to find support in the record. What we have here is an admittedly "temporary" oral agreement, uncertain and indefinite in all respects except as to the amount of rent, which became more uncertain by the changing actions of the parties and their treatment of each problem

on an *ad hoc* basis and in a most unbusinesslike manner. I find no competent evidence in the record to support an award of damages to the appellant. I cannot equate so easily, as does the majority, replacement of a vital and expensive unit with "repairs". I find no competent evidence in the record that a totally new furnace was necessary, nor do I find in the record any evidence that the petitioner was so advised by anybody, both of which must be demonstrated as a predicate for a recovery on the counterclaim. Further deficiencies in reference to the counterclaim, including inadequate proof of damages, appear on the record.

I would affirm.

GREENBLOTT, J. P., and KANE, J., concur with HERLIHY, J.; MAIN, J., concurs in part and dissents in part in an opinion.

Judgment modified, on the law and the facts, without costs, so as to provide that appellant recover from the petitioner the sum of $4,875 with interest from November 1, 1973, and, as so modified, affirmed. Settle order on notice.